IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DOMONIQUE COTTON,                      *
                                       *
        Plaintiff,                     *
                                       *
        v.                             *          CV 423-031
                                       *
QUANTIX,                               *
                                       *
        Defendant.                     *

_____

O R D E R

_____

Before the Court is Defendant Quantix's motion for summary judgment. (Doc. 16.) For the following reasons, Quantix's motion is **GRANTED**.

## I. BACKGROUND

Quantix provides warehousing, packaging, distribution, transportation, and third-party logistics services to customers in the chemical and plastics industries. (Doc. 19-1, at 1.) It is headquartered in Texas but operates facilities across the country, including one in Rincon, Georgia (the "Savannah Facility"). (Id.) The Savannah Facility primarily offers rail, packaging, production, and shipping operations. (Id. at 2.) At the relevant times, Lonnie Selph was the Operations Manager for the Savannah Facility. (Id.) On May 2, 2022, Tracy Doyal-Monks was promoted to Rail Supervisor at the Savannah Facility. (Id.) Selph was

Doyal-Monks' direct supervisor. (Id.) As Rail Supervisor, Doyal-Monks oversaw daily rail operations including preparing and reviewing documentation on inbound product shipments, coordinating with the packing and shipping departments to ensure flow of product through the facility, ensuring safe operations of rail vehicles and other equipment in the rail yard, and supervising rail workers. (Id.) Selph gave Doyal-Monks the authority to make personnel and staffing decisions for the rail workers she supervised, including the authority to end temporary assignments. (Id. at 3.)

During the relevant period, Quantix used a small, fluctuating number of temporary workers, some of which were from AtWork Personnel ("AtWork"), a local staffing company. (Id.) Plaintiff Domonique Cotton was a temporary rail worker supervised by Doyal-Monks. (Id. at 2-3.) Cotton applied to AtWork on April 7, 2022, and on April 18, 2022, AtWork assigned Cotton to work as a temporary rail worker at Quantix. (Id. at 3.) Cotton was informed he was employed by AtWork, not by the companies where AtWork assigned him to work, all his assignments were to be temporary, and the host employer could end his assignment at any time with or without notification. (Id.)

Temporary workers from outside staffing companies at the Savannah Facility reported their clock-in times directly to the staffing companies using an electronic timeclock which did not create a paper record for daily use at the facility. (Id. at 4.)

Additionally, upon arrival at the facility, Cotton was expected to fill out a paper timecard to record his work hours for Quantix. (Id. at 5.)

On the morning of May 23, 2022, Cotton arrived at the Savannah Facility and clocked in at 5:30 A.M. on AtWork's electronic time clock. (Id. at 6.) He wrote 5:30 A.M. on his Quantix timecard as well. (Id. at 7.) Cotton did not report to any supervisor or shift lead, and he did not immediately walk out to the rail yard to find his supervisor or shift lead. (Id. at 7-8.) Cotton did not call on the radio to find out who was working in the rail yard or what work needed to be done; instead, he went into an office, picked up a radio, and sat there. (Id. at 8.)

Around 6:00 A.M., another temporary rail worker, Chris Shields, called on the radio to report he had arrived at the facility, and then went out to the rail yard to begin working. (Id. at 9.) When Shields arrived in the rail yard around 6:00 A.M., Cotton accompanied him. (Id.) Doyal-Monks saw Cotton come to the rail yard around 6:00 A.M., and that was her first notification he was at the facility that day. (Id.) When Cotton finished his shift, he used the AtWork electronic time clock to clock out at 4:29 P.M. and returned to the office to clock out on his Quantix paper timecard. (Id.) When he arrived in the office to retrieve his paper timecard, he noticed Doyal-Monks had marked out his original clock-in time of 5:30 A.M. and changed it to 6:00

3

A.M.  (Id. at 10.)  Doyal-Monks told Cotton she was not going to approve the 5:30 A.M. start time because he did not begin working until 6:00 A.M., but Cotton denies he did not begin working until 6:00 A.M.  (Id.)  Doyal-Monks asked Cotton to return the timecard to her, but he refused and left the office with the timecard in his hand.  (Id.)

After Cotton left the office, Doyal-Monks sent an email at 4:37 P.M. to Jacoby Holden at AtWork informing him of Cotton's actions.  (Id. at 11.)  Doyal-Monks informed him Cotton failed to report to her upon his arrival at the facility and refused to give her his timecard for verification.  (Id.)  The Parties dispute if this occurred on May 23, 2022 or May 24, 2022, but on one of those days, Holden informed Cotton his Quantix assignment was terminated.  (Id.)  Doyal-Monks made the decision to end Cotton's temporary assignment at Quantix.  (Id. at 13.)  Cotton never told Doyal-Monks he believed he was discriminated against or treated differently because of his race.  (Id. at 11.)  However, Cotton believes Selph or someone else told Doyal-Monks he made complaints of discrimination during his time at Quantix.  (Id. at 12.)

On February 7, 2023, Cotton filed suit against Quantix under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.  (Doc. 1, at 2.)  Cotton brings claims for race discrimination and retaliation in violation of 42 U.S.C. § 1981. (Id. at 4-6.)  Cotton alleges he is an African American male, and

4

Quantix subjected him to discrimination based on his race, subjecting him to different terms and conditions of employment in violation of 42 U.S.C. § 1981. (Id. at 2, 4.) As a direct and proximate result of Quantix's actions, Cotton was embarrassed and humiliated, suffered damage to his emotional health, and lost back and front pay. (Id. at 5.) Cotton argues that rather than taking the appropriate steps to prevent or correct the harassment, Quantix retaliated against him when he complained of race discrimination by terminating him for engaging in a protected activity. (Id.) As a result, Cotton claims Quantix is liable to him for damages caused by its unlawful retaliation, including past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. (Id.)

On September 11, 2023, Quantix moved for summary judgment on all of Cotton's claims. (Doc. 16.) Cotton opposed Quantix's motion (Doc. 19), and Quantix replied in support (Doc. 23).

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Vaughn v. Ret. Sys. Of Ala., 856 F.

6

App'x 787, 789 (11th Cir. 2021) (citation omitted).   The non-movant must tailor its response to the method by which the movant carries its initial burden.   <u>Fitzpatrick</u>, 2 F.3d at 1116-17.   For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated."   <u>Id.</u> at 1116.   On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."   <u>Id.</u> at 1116-17 (citations omitted).   The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.   <u>See</u> <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981).   Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all Parties notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 18.)   For that reason, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.   The time for filing materials in opposition has

expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

### III. DISCUSSION

Quantix argues Cotton's discrimination claim fails as a matter of law, and Cotton cannot meet his burden to prove retaliation.  (Doc. 16-1, at 10-19.)  The Court addresses the claims in turn.

**A. Discrimination**

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." Jenkins v. Nell, 26 F.4th 1243, 1249 (11th Cir. 2022) (citations omitted).  "A plaintiff may use either direct evidence or circumstantial evidence to show race discrimination." Id. (citation omitted).  Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999) (citations and quotation marks omitted).  Direct evidence must "prove[] the existence of discriminatory intent without inference or presumption." Jefferson v. Sewon Am., Inc., 891 F.3d 911, 921 (11th Cir. 2018) (alterations adopted and citation omitted).

Quantix argues Cotton presents no direct evidence of discrimination. (Doc. 16-1, at 7-10.) Cotton does not respond to this argument but relies on circumstantial evidence to prove his claim. (Doc. 19, at 12.) The McDonnell Douglas framework generally governs the use of circumstantial evidence in employment discrimination cases. 411 U.S. 792 (1973). Under McDonnell Douglas, plaintiff has the burden to establish a prima facie case of discrimination. Jenkins, 26 F.4th at 1249. To establish a prima facie case of discrimination, plaintiff must show: "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated 'similarly situated' employees outside his class more favorably." Id. (citation omitted). If plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." Lewis v. City of Union City, 918 F.3d 1213, 1221 (11th Cir. 2019) (citation omitted). If defendant carries its burden, "plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that 'merges with the plaintiff's ultimate burden of persuading the factfinder that []he has been the victim of intentional discrimination.'" Id. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)) (alterations adopted).

Quantix argues Cotton cannot establish a prima facie case of discrimination because he cannot show Quantix treated similarly situated workers more favorably; it had a legitimate, nondiscriminatory reason for ending Cotton's temporary assignment; and Cotton cannot show pretext. (Doc. 16-1, at 10-16.) Quantix does not dispute Cotton was a member of a protected class, was subject to an adverse employment action, or was qualified for the job. (Id. at 10.) As to the prima facie case, Quantix only disputes the fourth prong, arguing Cotton cannot demonstrate Quantix treated similarly situated employees outside his protected group move favorably. (Id.)

1. Similarly Situated Employees

The Eleventh Circuit is clear that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decision." Lewis v. Ga. Power Co., No. 22-11395, 2023 WL 1818924, at *3 (11th Cir. Feb. 8, 2023) (quoting Chapman v. Al Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).

> Instead, to determine whether a comparator was treated more favorably, courts in this circuit examine the material differences between the plaintiff and comparator's treatment that are capable of evaluation by a court without personnel or industry expertise – such as whether they were both cited for misconduct, investigated, reprimanded, terminated, and provided the same opportunities at severance.

Whiteside v. PCC Airfoils LLC, No. 5:21-CV-62, 2023 WL 2787977, at *5 (S.D. Ga. Apr. 5, 2023) (citations omitted).

Quantix asserts Cotton was terminated because of the "brazen manner" in which he refused to comply with its timekeeping policy. (Doc. 16-1, at 11.)  It argues Cotton submitted a timecard showing he began work at 5:30 A.M. even though he admits he did not begin until 6:00 A.M., and when confronted by his supervisor, Doyal-Monks, he refused to give her the timecard for verification.  (Id.) Quantix argues Cotton's claim fails because he identified no other employee, either inside or outside of his protected class, who disobeyed Quantix's policy as "shamelessly" as he did.  (Id.)  In response, Cotton argues the record shows he was constantly treated less favorably than Caucasian temporary workers.  (Doc. 19, at 12.)  He asserts Doyal-Monks constantly yelled at and criticized him and other African American workers, but not Caucasian workers, undermined African American workers, and blamed African American workers for mistakes made by Caucasian workers.  (Id.)  Cotton claims Doyal-Monks called Mr. James Loving, a Caucasian worker, into the break room several times to sit with her and watch the camera while he and other African Americans worked.  (Id. at 12-13.)  Cotton also points to several comments made and actions taken by Doyal-Monks against African American workers, including referring to Cotton and others as "ignorant" and "ghetto" during a conversation with Loving, ignoring Loving's report about racist remarks another manager made, and terminating all African American workers in Loving's group when he was out sick.  (Id. at 13.)  In

reply, Quantix again argues Cotton identified no comparators, or employees in his same position, involved in or accused of similar misconduct and disciplined differently.  (Doc. 23, at 19 (citing Brown v. Jacobs Eng'g, Inc., 572 F. App'x 750, 752 (11th Cir. 2014)).)

The Court finds Cotton failed to identify a similarly situated employee to satisfy the required element of his race discrimination claim.  Cotton needed to show another employee involved in or accused of the same or similar conduct was disciplined differently. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997), *abrogated on other grounds by* Lewis, 918 F.3d 1213.  Cotton references Loving, a Caucasian employee, but there is no evidence he was similarly situated to Cotton or involved in the same or similar conduct that led to Cotton's termination.  (Doc. 19, at 12-13.) Besides the few specific instances involving Loving, Cotton only points to Doyal-Monks' actions and how she conclusively treated African Americans less favorably than Caucasian employees.  (Id.) Again, this cannot satisfy the fourth prong of a prima facie case of discrimination, requiring Cotton to identify someone in his position treated differently.  Since he fails to satisfy this element, Cotton cannot establish a prima facie case of discrimination.

2. Convincing Mosaic of Evidence

Even without a similarly situated employee, Cotton argues the convincing mosaic of evidence supports his discrimination claim. (Doc. 19, at 13.)   "[T]he convincing mosaic metaphor offers an alternative for plaintiffs unable to succeed through the McDonnell Douglas framework." Ossmann v. Meredith Corp., 82 F.4th 1007, 1020 (11th Cir. 2023) (citation omitted).   A plaintiff can prove his race discrimination claim with a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Tynes v. Fla. Dep't of Juv. Just., 88 F.4th 939, 946 (11th Cir. 2023) (citations omitted).   "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." Jenkins, 26 F.4th at 1250 (citation and quotation marks omitted).   But "the convincing mosaic inquiry is identical to the final stage of the McDonnell Douglas framework: both ask whether there is enough evidence for a reasonable jury to infer intentional discrimination." Ossmann, 82 F.4th at 1020 (citation omitted). The Court can "look beyond the prima facie case to consider all relevant evidence in the record to decide the ultimate question of intentional discrimination." Tynes, 88 F.4th at 947.   "A triable

13

issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Jenkins, 26 F.4th at 1250 (citation and quotation marks omitted).

The Court does not find the record, viewed in the light most favorable to Cotton, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by Quantix. The instances of alleged discrimination Cotton relies on to argue the convincing mosaic do not rise to a finding of systematic better treatment of similarly situated employees. See id. As Quantix argues, the allegations raised by Cotton fall short of this standard. (Doc. 23, at 20-23.) Cotton points to several comments made by Doyal-Monks suggesting her bias, but he fails to present sufficient evidence to prove intentional discrimination. Cotton tries to argue the record shows he was "constantly treated less favorably than Caucasian temporary workers," but points only to general accusations of Doyal-Monks criticizing him and other African Americans, undermining African American workers, and blaming African Americans for mistakes. (Doc. 19, at 12-13.) These general accusations are insufficient to meet the standard of a convincing mosaic of evidence, and many of the general discriminatory actions Cotton relies on do not involve him, are

vague, and contain no specific allegations of discrimination. The Eleventh Circuit requires significantly more evidence to find a plaintiff presented a convincing mosaic. See Jenkins, 26 F.4th at 1250-51 (finding convincing mosaic of discrimination when Caucasian plaintiff showed he committed same violation as another non-Caucasian employee that stayed employed, 18 employees left department after defendant took over, defendant mistreated three other Caucasian employees, defendant had close relationship with human resources, defendant made racially based comments about Caucasian employees, plaintiff declined to change accident report after defendant asked him to, and defendant presented shifting reasons for terminating plaintiff); Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328-46 (11th Cir. 2011) (finding convincing mosaic of discrimination when plaintiff showed defendants had motive to discriminate, treated African American and Caucasian employees differently several times and tracked race when making disciplinary decisions). Therefore, Cotton's discrimination claim also fails under the convincing mosaic of evidence standard. Based on these findings, Cotton has failed to make out a prima facie case of discrimination, and his claim fails. However out of an abundance of caution, the Court addresses Quantix's other arguments for summary judgment on Cotton's discrimination claim.

3. Legitimate, Nondiscriminatory Reason for Ending Cotton's Assignment and Pretext

Even if Cotton proved a prima facie case of discrimination, Quantix argues it is still entitled to summary judgment because it had a legitimate, nondiscriminatory reason for termination, and Cotton cannot show pretext. (Doc. 16-1, at 12-16.)  The Eleventh Circuit has held "[t]he legitimate, nondiscriminatory reason offered by an employer for an action need not be one a judge or juror would act on or approve . . . . An employer must simply advance an explanation for its action that is not discriminatory in nature." Lee v. Safe-Dry Carpet & Upholstery, No. 20-14275, 2021 WL 3829028, at *3 (11th Cir. Aug. 27, 2021) (citing Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999)).[1]  "[T]he Court's inquiry is limited to whether [d]efendant's decisionmakers believed that [p]laintiff was guilty of the . . . conduct . . . and, if so, whether that belief was the reason for the discharge." Bullington v. Jefferson S. Corp., No. 4:16-CV-0245, 2017 WL 6598148, at *16 (N.D. Ga. Nov. 13, 2017) (alterations adopted) (quotations omitted).  "An employer's burden to articulate a nondiscriminatory reason is a burden of production, not of persuasion," and is "exceedingly light." Lee, 2021 WL 3829028, at *3 (quoting Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769-70 (11th Cir. 2005)).  If defendant carries its burden, "plaintiff must then have an opportunity to prove by a

---

[1] Many cases cited in Lee were in the Title VII context, but the elements of a race discrimination claim under § 1981 are the same as a Title VII disparate treatment claim in the employment context. Jenkins, 26 F.4th at 1249.

preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Burdine</u>, 450 U.S. at 253 (citation omitted).

Quantix terminated Cotton because he violated its policy by clocking in at 5:30 A.M. and then sitting in the office until 6:00 A.M. without reporting to a supervisor or going into the work yard. (Doc. 16-1, at 12-13.) Then, after clocking out that day, he refused to let Doyal-Monks verify his timecard. (<u>Id.</u> at 13.) Quantix states this is a failure and outright refusal to comply with its timekeeping policy, justifying his termination. (<u>Id.</u>) Cotton denies Quantix had any timekeeping policy that required him to get Doyal-Monks' signature on his timecard or gave her the authority to change his timecard. (Doc. 19, at 7-9.) Nevertheless, Quantix met its exceedingly light burden of putting forth a legitimate, nondiscriminatory reason for Cotton's termination – violation of its timekeeping policy. The Court turns to whether Cotton proved by a preponderance of the evidence that Quantix's reason for his termination was not the true reason but a pretext for discrimination. <u>Burdine</u>, 450 U.S. at 253 (citation omitted).

To show pretext, Cotton "must demonstrate that the proffered reason was not the true reason for the employment decision, either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence." Whiteside, 2023 WL 2787977, at *7 (quoting Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005)) (internal quotation marks omitted). "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." Harris v. Quantix SCS, LLC, No. 4:22-cv-253, 2024 WL 1337887, at *4 (S.D. Ga. Mar. 27, 2024) (quoting Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001)). "A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Id. (quoting Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006)) (internal quotation marks omitted and alterations adopted). If the employer's reason is one that might motivate a reasonable employer, plaintiff must meet that reason head on and rebut it – plaintiff cannot succeed simply by "quarreling with the wisdom of that reason." Whiteside, 2023 WL 2787977, at *7 (quoting Chapman, 229 F.3d at 1030).

While Cotton disputes whether there was a known timekeeping policy, he does nothing further to show Quantix falsely relied on this policy and terminated him because of discrimination. He tries to argue Quantix offered inconsistent or conflicting reasons for his termination, relying on Quantix producing timesheets showing he consistently clocked in for his shift around 5:30 A.M., but was

never accused of violating any policy until after he complained of discrimination.  (Doc. 19, at 9-10.)  He also points to Quantix's argument that Doyal-Monks terminated him after he refused to let her verify his timecard, arguing it is inconsistent with her testimony that she decided after she spoke with Selph later that day.  (Id. at 10-11.)  He also relies on the fact there was no supervisor to report to when he arrived that day, he never previously had to get a signature from Doyal-Monks for his timecard, and he never had his timecard changed.  (Id. at 10-11.)  Based on these facts, Cotton argues there is sufficient evidence to find his termination was pretextual.  (Id. at 13.)

The Court finds Cotton's arguments fall short of proving Quantix's reason for his termination was false.  As to the timekeeping policy, simply because he was unaware of the policy and had no issues with it previously does not create a question of fact as to its existence or Quantix's reason for terminating him. Further, the Court does not find Cotton's alleged "inconsistencies" sufficient to prove pretext.  While pretext can be established by proof of shifting explanations or inconsistent statements regarding the adverse employment action, "a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could find them unworthy of credence."

19

Harris, 2024 WL 1337887, at *5 (citations and quotation marks omitted).   Cotton's reliance on this approach is insufficient because he merely questions the order of events following his termination, not the reason for his termination.   He argues Doyal-Monks made the decision to terminate him *after* she spoke with Selph, not on her own accord when he refused to return his timecard to her.   (Doc. 19, at 10-11.)   He also argues Doyal-Monks' testimony conflicts with Defendant's argument that she immediately contacted AtWork to end his assignment when he left her office that day.   (Id. at 11.)   Thus, Cotton objects to Quantix's recitation of the facts, but Quantix never switches or contradicts its *reason* for Cotton's termination.   Throughout the case, Quantix has maintained Cotton was terminated for violating the timekeeping policy, and the alleged inconsistencies with the order of events do not change that fact or make it that a reasonable fact-finder would find the reason unworthy of credence.   Thus, the Court finds Quantix offered a legitimate nondiscriminatory reason for Cotton's termination, and Cotton failed to prove pretext.

Based on the foregoing, the Court finds Cotton failed to prove a prima facie case of discrimination, and even if he had, his claim still fails because Quantix put forth a legitimate reason for his termination and Cotton failed to prove pretext.   As such, Quantix's motion for summary judgment is **GRANTED** on Cotton's discrimination claim.   The Court turns to Cotton's retaliation claim.

**B. Retaliation**

Quantix also moves for summary judgment on Cotton's retaliation claim, arguing he cannot establish a prima facie case of retaliation. (Doc. 16-1, at 16-17.) Cotton argues he can establish a prima facie case and the proposed nondiscriminatory reason for his termination is pretextual. (Doc. 19, at 4.) "To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that [1] he engaged in statutorily protected activity, [2] he suffered a materially adverse action, and [3] there was some causal relation between the two events." Whiteside, 2023 WL 2787977, at *10 (quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)). "A retaliation claim based on circumstantial evidence is also analyzed under the McDonnell Douglas burden-shifting framework." Id. (quoting Hampton v. Amedisys Ga., LLC, No. 22-11275, 2023 WL 152193, at *3 (11th Cir. Jan. 11, 2023)).

Quantix does not explicitly dispute Cotton engaged in a statutorily protected activity or suffered a materially adverse action. (See Doc. 16-1, at 16-17.) Instead, its argument turns on the fact Cotton cannot meet his burden of proving his protected activity was a but-for cause of Quantix's adverse action. (Id. at 16.) Quantix argues that even assuming Cotton complained to Selph about unfair treatment and discrimination a week before his termination, his retaliation claim still fails because Cotton

21

cannot prove his complaints were the but-for cause of his termination. (Id. at 17.) Quantix asserts Cotton did not complain to Doyal-Monks, and she was unaware of any complaints when she terminated him. (Id.) It argues the undisputed evidence shows Doyal-Monks terminated him for violating the timekeeping policy. (Id.) In response, Cotton argues the record shows Doyal-Monks knew of his complaints, because Selph told her about them, and Doyal-Monks spoke with Selph before terminating him. (Doc. 19, at 4-5.) Cotton argues this is direct and circumstantial evidence that Doyal-Monks knew about his discrimination complaint at the time of his termination which is sufficient to let a jury decide the issue. (Id. at 5.)

### 1. Causal Connection

Even assuming Doyal-Monks knew of Cotton's discrimination complaints, which is disputed, the Court finds Cotton still fails to establish a prima facie case of retaliation. To establish a causal connection, a plaintiff must show: "(1) the decisionmakers were aware of his protected conduct and (2) his protected activity and the adverse employment action were not wholly unrelated." Harris, 2024 WL 1337887, at *6 (citing Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). "[A] plaintiff must show that his protected activity was a but-for cause of the alleged adverse action by the employer."

Id. (quoting Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1135 (11th Cir. 2020)) (internal quotation marks omitted). Cotton's main argument is that Doyal-Monks knew about his discrimination complaint when she terminated him, which creates a disputed fact and is enough to establish a jury question on retaliation. (Doc. 19, at 5.) Quantix disputes whether Doyal-Monks was aware of Cotton's protected activity, arguing Cotton submitted a sham declaration to try to create a material issue of fact.[2] (Doc. 23, at 5.) Even assuming Doyal-Monks knew about Cotton's complaint of discrimination, her knowledge alone is insufficient for Cotton to prove a prima facie case of retaliation. While "temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated," "intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action." Harris, 2024 WL 1337887, at *6 (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361 (11th Cir. 2007); Henderson v. FedEx Express, 442 F. App'x 502, 506 (11th Cir. 2011)). In this case, the evidence viewed in the light most favorable to Cotton shows Doyal-Monks knew Cotton complained of discrimination to Selph one week before his termination. (Doc. 19, at 5; Doc. 16-1, at 17.) However, after he complained, Cotton violated

---

[2] Quantix objected to Cotton's declaration. (Doc. 22.) However, given the Court's findings, it does not address the objections as they are unnecessary for the Court's analysis.

Quantix's timekeeping policy, which Quantix asserts was the reason for his termination.   (Doc. 16-1, at 18.)   Thus, this case is similar to this District's recent decision in Harris, in which the plaintiff had "an intervening act of misconduct sufficient to sever any causal connect between [p]laintiff's complaints and his termination." 2024 WL 1337887, at *7.   Cotton's violation of the timekeeping policy severed the causal connection between his complaint of discrimination and his termination.   Thus, Cotton failed to prove his complaint of discrimination was a but-for cause of his termination, and his prima facie claim of retaliation fails. See id. at *6 (citation omitted).   As with his discrimination claim, out of an abundance of caution, the Court addresses Cotton's pretext arguments as they pertain to retaliation.

2. Pretext

Even assuming Cotton made a prima facie case of retaliation, Quantix argues it is entitled to summary judgment because it had a legitimate nonretaliatory reason for termination, and Cotton fails to prove pretext.   (Doc. 16-1, at 18.)   Cotton makes the same arguments for pretext he made for his discrimination claim. (Doc. 19, at 7-11.)

When dealing with retaliation, if a plaintiff makes "the requisite showing of causation, the remaining stages of the McDonnell Douglas burden-shifting framework are effectively the same" as a discrimination claim.   Harris, 2024 WL 1337887, at *7.

24

Thus, if plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." Lewis, 918 F.3d at 1221 (citation omitted).   If defendant carries its burden, plaintiff must demonstrate the reason was merely pretext. Id. (citation omitted).   Thus, the Court repeats the same analysis as above.

As the Court already found, Quantix put forth a legitimate, nondiscriminatory reason for Cotton's termination – his violation of its timekeeping policy.   Thus, Cotton must show "*both* that the reason was false, *and* that retaliation was the real reason." Harris, 2024 WL 1337887, at *7 (citing Gogel, 967 F.3d at 1136) (emphasis in original).   Cotton made the same pretext arguments for both of his claims and offers no argument on how the outcome should be different for the two claims.   (Doc. 19, at 7-11, 13.) Because the pretext arguments for retaliation match that of discrimination, the Court finds Cotton failed to carry his burden of proving pretext.   Cotton cannot show Quantix's reason for terminating him, his violation of its timekeeping policy, was false, and that retaliation was the real reason.   The burden shifting framework requires him to show that but-for his discrimination complaint, he would not have been fired, and he has not done so.   As a result, Cotton fails to show pretext and his

retaliation claim fails.   Thus, Quantix's motion for summary judgment is **GRANTED** on Cotton's retaliation claim.

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 16) is **GRANTED**.   The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant Quantix, **TERMINATE** all other pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _16th_ day of September, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA